HUBELL & ASSOCIATES LLC
260 MADISON AVENUE, 15TH FLOOR
NEW YORK, NY 10016
(212) 710-5003

**By ECF**                                                                 January 7, 2024

Honorable John G. Koeltl, U.S.D.J.
United States District Court for the Southern District of New York

Re:    *Albaneze, et al. v. BDO USA,* P.C. Civil Action No. 1:23-cv-07197

Dear Judge Koeltl:

We represent Plaintiffs Jeffery T. Albaneze, Matthew B. Cochran, and Kaitlyn P. Weatherly (together, "Plaintiffs") in the above-captioned matter. We write pursuant to Individual Rule II.D. to request a pre-motion conference with respect to a motion to dismiss and strike Defendant BDO USA, P.C.'s ("BDO") counterclaims (ECF No. 25, at 54-99).

**BDO's Factual Allegations**

Plaintiffs were wealth advisors of LBA Wealth Management, LLC ("LBA"), a small wealth advisory firm based in Jacksonville, Florida, when BDO acquired LBA in the spring of 2017. (Countercl. ¶¶ 1-2, 39.) In connection with the transaction, BDO hired Plaintiffs pursuant to Manager Agreements. (*Id.*) In the spring of 2023, BDO began negotiations to sell BDO's entire wealth advisory business to Choreo, LLC ("Choreo"). (*Id.* ¶ 55.) In connection with the potential transaction, BDO arranged for Choreo to offer Plaintiffs proposed employment agreements. (*Id.* ¶ 58.) Plaintiffs "expressed dissatisfaction" with Choreo's proposed "terms of employment." (*Id.* ¶ 62.) Plaintiffs were concerned about the restrictive covenants included in the proposed terms of employment, among other issues. (*Id.* ¶¶ 60, 63.)

BDO attempted to persuade Plaintiffs to accept the proposed employment agreements with Choreo (*id.* ¶¶ 73-74), but BDO could not reach an agreement with them (*id.* ¶ 8). "BDO advised Choreo that Jeff Albaneze, Cochran, and Weatherly would not be joining Choreo and the BDO Jacksonville clients would be carved out of the transaction[.] Choreo reduced the proposed acquisition price . . . by $13 million due to the reduced client base and assets under management that would remain with BDO." (*Id.* ¶ 8.) BDO terminated Plaintiffs on September 22, 2022. (*Id.* ¶ 15.) As of October 12, 2023, Plaintiffs serviced 120 former BDO clients representing about "$1.77 million in management fees over the last four quarters," and the number of clients continues to grow. (*Id.* ¶ 18.)

BDO brings six claims against Plaintiffs. BDO alleges that Plaintiffs breached Paragraph 7(a) of their Manager Agreements with BDO by soliciting clients (Count V). BDO also brings five tort claims against Plaintiffs (Counts I-III, VI-VII), alleging that Plaintiffs (a) tortiously interfered with BDO's negotiations with Choreo, (b) tortiously interfered with BDO's relationship with its new wealth advisory subsidiary, (c) committed civil conspiracy to tortiously interfere, (d) were faithless servants, and (e) breached their fiduciary duties by soliciting clients.

**BDO's Breach of Contract Claim Should Be Dismissed Because It Fails to Allege Breach**

BDO's breach of contract claim fails to state a claim because BDO failed to allege any breach of the Manager Agreements. The Agreements do not contain a non-solicitation covenant.

Hon. John G. Koeltl
Page -2-

Rather, the provision that BDO characterizes as a non-solicitation covenant, Paragraph 7(a), expressly permits Plaintiffs to solicit clients serviced by BDO, so long as Plaintiffs compensate BDO pursuant to a contractual formula.  Paragraph 7(a) states that Plaintiffs agree to disclose to BDO the work they performed for clients within 18 months after their departure from BDO.  Paragraph 9 states that any amounts owed by Plaintiffs under Paragraph 7(a) are to be paid in "five equal annual installments" beginning thirty days after this 18-month period.  BDO has not alleged that Plaintiffs failed to make any required payments, and no payment is even yet due.

>Paragraph 7(a) of the Agreements provides in pertinent part as follows:
>
>7. In consideration of the Firm granting Employee access to Confidential Information and for employing Employee in a Manager position, it is agreed that prior to, at, or within eighteen (18) months after, his/her departure from the Firm (whether by resignation, termination or otherwise): (a) If, without the specific written consent of [BDO], Employee performs . . . engagements involving accounting, auditing, tax, investment advisory or consulting services, or any related services, for a Client (defined below) or causes a Client or Prospective Client (defined below) of the Firm to terminate its relationship with the Firm through unfair competition or business practices, including through the unauthorized use of Confidential Information, then Employee will compensate the Firm for the loss and damages suffered by the Firm by reason of lost engagement(s) by paying liquidated damages in an amount equal to [formula].

(Countercl. Exs. A-C, ¶ 7(a).)  Paragraph 7(a) of the Agreements thus does not prohibit solicitation; it instead expressly **permits** solicitation so long as compensation is paid to BDO.  Indeed, the New York Court of Appeals has construed similar language in a different BDO manager's agreement, holding that the provision "does not prevent [an employee] from competing for new clients, **nor does it expressly bar him from serving BDO clients**." *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388 (1999) (emphasis added).

Because the unambiguous language of Paragraph 7(a) does not prohibit Plaintiffs from soliciting clients and the only breach that BDO alleges is breach of Paragraph 7(a) for soliciting clients, BDO's breach of contract counterclaim should be dismissed.  For similar reasons, BDO's request for an injunction enjoining Plaintiffs from soliciting clients or prospective clients for an 18-month period (Countercl., Prayer for Relief(i)) should be stricken.

**BDO's Tort Claims Fail Under the Economic Loss Doctrine and on Other Grounds**

BDO's five tort claims against Plaintiffs should be dismissed pursuant to the economic loss doctrine and because they are otherwise deficient.  The economic loss doctrine bars BDO's tort claims because those claims sound in contract rather than tort.  The economic loss doctrine prohibits a plaintiff from pursuing tort claims for purely economic losses when there is a contract addressing the subject matter of the tort claims.  *See, e.g.*, *Pac. Life Ins. Co. v. US Bank Nat'l Ass'n*, 636 F. Supp. 3d 366, 438 (S.D.N.Y. 2022); *N. Atl. Marine, Ltd. v. Sealine Int'l, Ltd.*, 06-20200-CIV, 2007 WL 5298433, at *5 (S.D. Fla. Mar. 29, 2007).

New York law governs the Agreements, but BDO's tort claims, if there is a conflict of laws, may be governed by Florida law under the "interests analysis." *See Rhoda v. Rhoda*, 14

CIV. 6740 (CM), 2017 WL 11530950, at *21 (S.D.N.Y. June 22, 2017) (noting that for tort claims the "significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort"). Here, Plaintiffs are each domiciled in Florida; BDO's principal place of business is Illinois and it is incorporated in Virginia; and the locus of the torts is Florida.

BDO's tort claims allege that Plaintiffs' solicitation of customers caused economic losses to BDO, expressly relying upon the Agreements as the substantive basis for its tort claims. *See, e.g.*, Countercl. ¶ 283 (alleging "solicitation of BDO's clients"); ¶ 275 (alleging that Plaintiffs were "threatening" BDO by saying that they could solicit BDO clients); ¶ 312 (quoting Paragraph 7(a) of the Agreements); ¶ 313 (alleging there was a breach of "contractual duty"); ¶ 317 (claiming that Plaintiffs are "liable to BDO for this breach of their [] Agreements"); ¶ 318 (alleging "breaches of their contractual duty not to solicit"); ¶ 324 (soliciting clients); ¶ 328 (soliciting clients).

The Agreements govern Plaintiffs' rights to solicit customers and expressly permit them to do so provided that they compensate BDO per the formula, and on the schedule, set forth in the Agreements. Allowing BDO to proceed on its tort claims for what is essentially a breach of the purported non-solicitation covenant would allow BDO to rewrite the Agreements both in terms of what conduct is prohibited (and permitted) and the damages that BDO may obtain for any breach. Accordingly, the economic loss doctrine bars the tort claims, and they should be dismissed.

Additionally, BDO's tort claims suffer from other fundamental deficiencies. For example, BDO's tortious interference claims allege that Plaintiffs interfered with the (i) BDO-Choreo transaction and (ii) BDO's relationship with its own subsidiary, because Plaintiffs did not agree to new proposed employment agreements with Choreo. But a tortious interference claim does not lie when a party merely exercises its right to negotiate by, for example, not agreeing to new employment agreements. Nor does a tortious interference claim lie when, as here, the alleged conduct was directed at the plaintiff (BDO) rather than at the counterparty (Choreo). *See Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 369 (S.D.N.Y. 2012) ("[C]onduct constituting tortious interference with business relations is, by definition, conduct, directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship."). As another example, BDO's faithless servant claim should also be dismissed because that claim is not recognized under Florida law. Similarly, BDO's breach of fiduciary duty claim should be dismissed because BDO alleges merely solicitations of customers (expressly permitted by the Agreements) and preparations to compete, which are permitted under substantive law. *See, e.g.*, *DeWitt Stern Grp., Inc. v. Eisenberg*, 734 F. App'x 48, 51 (2d Cir. 2018) (summary order).

Accordingly, there are substantial grounds for dismissing BDO's Counterclaims, and Plaintiffs respectfully request that the Court grant Plaintiffs leave to file a motion to dismiss.

Respectfully submitted,

*s/ Richard A. Hubell*

cc: Counsel of Record by ECF